Donald MAIDEN, Plaintiff,

v.

**INDIANA & OHIO RAILWAY COMPANY, et al.,** Defendants.

No. 3:03CV7012.

United States District Court, N.D. Ohio, Western Division.

Jan. 28, 2005.

954

Erwin J. Leizerman, Michael J. Leizerman, Law Office of E.J. Leizerman, Toledo, OH, for Plaintiff.

James R. Knepp, II, Robison, Curphey & O'Connell, Toledo, OH, for Defendant.

### MEMORANDUM OPINION

KATZ, District Judge.

This is an FELA action brought by Donald Maiden (Maiden) against his employer, Indiana & Ohio Railway Company (the Railway) and RailAmerica, Inc. (RailAmerica). Maiden brings claims for negligence and wrongful discharge.

On August 10, 2002, plaintiff allegedly was injured when he stepped on a piece of debris while crossing tracks to board a train at the Railway's yard in Lima, Ohio. Maiden reported his injury, but refused to submit to an interview about his accident with a third-party claims administrator, Terry Rhine (Rhine). The Railway repeatedly warned Maiden that if he did not sit for the interview with Rhine, he would be terminated for insubordination. Despite repeated warnings, Maiden continued to refuse to sit for the interview, and the Railway terminated him.

Pending is defendants' motion for partial summary judgment as to Maiden's claim for wrongful discharge. For the reasons that follow, defendants' motion shall be granted.

### Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present

some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

### Discussion

■ Maiden's Amended Complaint, Count II, alleges that, "as a result of re-

porting his injury of August 10, 2002 to his employers ... the defendants wrongfully [fired] Plaintiff ... in retaliation for reporting the injury ..." (Doc. 29 at 3–4). The record clearly supports, and Maiden all but admits, that he was not terminated in retaliation for reporting the injury, but rather for failing to submit to the interview with Rhine. Maiden now maintains that such a firing violates four proposed public policies: [1]

1) The right of injured workers to seek compensation under the FELA;

2) The right of injured workers to report their injuries;

3) The right of injured workers to consult with counsel; and

4) The prohibition on attorney contact with a represented party.

To establish a claim for wrongful termination in violation of public policy, a plaintiff must establish:

1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element);

2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element);

3) The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and

4) The employer lacked an overriding legitimate business justification for the dismissal (the overriding justification element).

*Collins v. Rizkana*, 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653 (1995).

One of Maiden's claims fails the clarity element, all fail the jeopardy element, and

1. Maiden's wrongful discharge claim is not actionable under the FELA. *Shrader v. CSX* *Transp., Inc.*, 70 F.3d 255, 258 (2d Cir.1995). Maiden does not contest this point.

all fail the causation and justification element.

### 1. Clarity

■ Before proceeding to the enumerated public policies Maiden presents, this Court notes that what Maiden truly appears to seek from this Court is the creation of a new public policy protecting injured workers from being interviewed about their injuries by their employers—a laborer's right to silence, so to speak. He has provided no statutory or case law support for the existence of such a policy, and this Court will not create one.

■ As to Maiden's expressed policies, Maiden presents little, if any, support for the existence of a public policy in favor of the protection of an employee's right to exercise his rights under the FELA. Rather, he bases his argument on a Tenth Circuit case applying Kansas law, *Hysten v. Burlington N. Santa Fe R.C.*, 98 Fed. Appx. 764, 2004 WL 966286 (10th Cir. 2004). Kansas law, however, is not at issue. Plaintiff offers the thoroughly conclusory statement that "Ohio's public policy position is very much like that enunciated by the Kansas Supreme Court in *Hysten*." While this may be true, and while such a policy may be preferable, plaintiff offers no support for this bold contention.

### 2. Jeopardy

■ Assuming these public policies exist, it is unclear how any of the proposed public policies would be harmed by the Railway's actions.[2] Thus, these claims fail the jeopardy element. Maiden contends that the Railway's actions jeopardize four public policies.

■ First, Maiden contends it jeopardizes his right to seek compensation under the FELA. It is unclear how giving a full and accurate report of his injury would jeopardize this right. In fact, Ohio public policy has long stood for just the opposite, encouraging reports of workplace injury and protecting reporting employees.

■ Second, Maiden contends that his termination creates a "chilling intimidating effect ... on other employees reporting on duty injuries." While public policy does protect the rights of workers to report injuries without harassment or intimidation, the record clearly shows that Maiden was not fired for reporting his injury. Quite the opposite, he was fired for not fully reporting his injury. This set of facts simply does not implicate this public policy, let alone jeopardize it.

■ Third, Maiden contends the Railway's actions endanger the worker's right to consult with counsel. There is no factual support for any contention that Maiden was terminated for retaining counsel. In fact, the Railway notified him that he could bring his attorney to the interview with Rhine. Maiden's counsel apparently sought to conduct the interview with the agreement that its contents would not be used in any future litigation. Ohio does not support a right to be represented by counsel at meetings with one's employer, *Bickley v. FMC Techs., Inc.*, 282 F.Supp.2d 631, 643 (N.D.Ohio 2003), and it certainly does not give employees (or their attorneys) the right to dictate the terms of

---

2. Recently, in *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655 (6th Cir. 2005), the Sixth Circuit clarified the jeopardy element of Ohio's public policy tort. To succeed on a public policy tort for wrongful termination, a plaintiff must give the employer "notice that they are no longer dealing solely with an at-will employee, but with someone who is vindicating a governmental policy." *Id.* This issue was not briefed by the parties, and it is unclear whether or not Maiden met this burden with regards to the various alleged public policy violations.

those meetings. These facts do not endanger this public policy.

 Finally, and perhaps most novel of all, Maiden contends that the Railway's actions endanger the public policy against consulting with a represented party, as codified in Ohio Disciplinary Rule 7–104. That rule, of course, applies to attorneys, not companies. Simply put, if such routine investigations of workplace injuries violated this rule, it would be nearly impossible for employers to conduct the sort of investigations that are supported by public policy and often required of employers. Ohio Disciplinary Rule 7–104 prohibits conduct with a represented party except where there is consent or the party is "authorized by law to do so." Accident investigations are authorized by 49 C.F.R. § 225.33, and thus exempted from the prohibition on contact with a represented party.

### 3. Causation and Justification

 To the extent that Maiden's claim is simply that he was fired for pursing his FELA claim (in whatever fashion), he fails the causation element; no reasonable juror could find that Maiden was terminated pursuing his FELA claim, as the evidence clearly shows he was terminated due to his refusal to sit for the interview despite clear, repeated warnings.

On numerous occasions, months before any claim was filed, the Railway notified Maiden in writing that he would be dismissed if he did not sit for an interview with Rhine about his injury. This evidence is clear and uncontroverted. What Maiden offers in reply is largely an argument that why he was terminated is a question of fact for a jury. He has raised no facts to create such an issue, however. Thus, there is no material issue for trial, and summary judgment for the defendants is proper.

### Conclusion

For the aforementioned reasons, Defendants' motion for partial summary judgment as to Count II granted.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendants' motion for partial summary judgment on Count II is granted.